**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**SHERYL SCOGGINS**                                                              **PLAINTIFF**

**v.**                                              **CIVIL ACTION NO.: 3:23-cv-3135-HTW-MTP**

**ACCOUNT MANAGEMENT**                                          **DEFENDANT**
**SERVICES, INC.**

**PLAINTIFF'S MEMORANDUM OF AUTHORITIES IN RESPONSE TO DEFENADNT'S**
**MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** the Plaintiff, Sheryl Scoggins ("Plaintiff"), by and through her

undersigned counsel, and submits this Memorandum in Opposition to Defendant's Motion

for Summary Judgment. For the reasons set forth below, Plaintiff respectfully requests

that the Court deny Defendant's Motion in its entirety.

**I.    INTRODUCTION**

This case arises from Defendant's unlawful termination of Plaintiff, a 66-year-old

employee with a longstanding history of approved intermittent leave under the Family and

Medical Leave Act ("FMLA") and a demonstrable record of strong performance during her

16-year tenure. Plaintiff categorically denies allegations of performance deficiencies,

asserting that she consistently received positive feedback and that no written warnings or

disciplinary actions were ever issued prior to her termination. *See Exhibit "A",* Second

Affidavit of Sheryl Scoggins ¶¶ 3-5. Plaintiff also alleges interference and retaliation under

the FMLA, as well as age discrimination under the Age Discrimination in Employment Act

("ADEA"). Defendant's motion for summary judgment fails because genuine disputes of

material fact exist regarding the alleged reasons behind Defendant's termination of

Plaintiff, the alleged exhaustion of Plaintiff's FMLA leave, Defendant's failure to provide

1

required written notice under 29 C.F.R. § 825.300(d), and pretextual justifications for Plaintiff's termination.

## II.    FACTUAL BACKGROUND

Plaintiff is a 68-year-old female resident of Rankin County and Pelahatchie, Mississippi. [Doc. 29-1 at p. 1].  Plaintiff was hired on July 12, 2006, as a Billing Specialist at Account Management Service, Inc. (AMS). *Id.* Defendant is an employer as defined by the ADEA. *Id.*

Plaintiff worked over 1,250 hours during the twelve months preceding her termination. *Id.* On or about November 28, 2016, Plaintiff was initially approved and certified to take intermittent FMLA leave for chronic migraines. *Id.* Plaintiff was medically monitored for her chronic migraines by Neurologist Dr. Ruth Fredericks in Jackson. *Id.*

A few years later, in November 2021, Plaintiff then underwent shoulder surgery. *Id.* When she had the surgery, Defendant AMS counted her days towards her intermittent FMLA leave. *Id.* at p. 2.  In July 2022, Plaintiff went to Benefits Coordinator Jill Peacher and requested FMLA documents. *Id.* Plaintiff then told Ms. Peacher she wanted to have Dr. Fredericks complete the FMLA documents so that she (Plaintiff) could have her FMLA certification renewed for the upcoming year. *Id.*

Moreover, Plaintiff had previously renewed her FMLA leave annually during previous years she was employed at AMS (2016-2022). *Id.* Ms. Peacher responded that Plaintiff did not need to worry about getting recertified and that she (Plaintiff) had until September 2022 to renew.  *Id.* Plaintiff persisted, however, and had the FMLA documents sent to Dr. Fredericks in July 2022.  *Id.* Ultimately, Plaintiff had her FMLA certification approved on July 20, 2022. *Id.*

In the weeks leading up to August 2022, Plaintiff endured increasing problems with her migraines, averaging five to six migraines per week. *Id.* On August 5, 2022, Plaintiff was medically evaluated by Dr. Fredericks. *Id.* At that time, Dr. Fredericks scheduled Plaintiff for some diagnostic procedures, i.e., MRI and a lumbar puncture. *Id.*

On August 7, 2022, Plaintiff informed Billing Supervisor Michelle Morgan that she (Plaintiff) needed to take three or more weeks of FMLA leave to undergo these procedures and get treatment for the worsening migraines. *Id.* Documentation from Dr. Fredericks was faxed to AMS, taking Plaintiff off work from August 5, 2022 through September 9, 2022, to address the treatment of her chronic migraines. *Id.* at p. 3.

On August 23, 2022, Plaintiff received a letter from AMS President Toni Parkinson. *Id.* The letter informed Plaintiff that she was terminated, allegedly for missing too much work. *Id.*  Plaintiff asserts that she was never notified by her employer regarding when her FMLA days/hours were running short. *Id.* Additionally, Plaintiff contends that she would regularly approach Ms. Peacher in her office and ask if she had sufficient FMLA days/hours remaining. *Id.*

Prior to her (Plaintiff's) termination, Ms. Peacher had always kept Plaintiff informed about whether she had FMLA time remaining. *Id.* Plaintiff contends that Defendant failed to provide written notice of the expiration of her FMLA leave, as required under 29 C.F.R. § 825.300(d)(1), leaving her without a clear understanding of her FMLA entitlement and contributing to her termination while on protected leave. *Id.* After she was terminated, Plaintiff learned that her position was replaced by a substantially younger and less qualified candidate, Tayler Jenkins (24-year-old female). *Id.*

On November 3, 2022, Plaintiff filed an EEOC Charge (EEOC Charge # 423-2023-00178) of Age Discrimination against AMS. *Id.* On May 3, 2023, in response to Plaintiff's Charge, AMS submitted a Position Statement to the EEOC. *Id.*

AMS's Position Statement alleges that "…as of June 22, 2022, [Plaintiff'] FMLA entitlement was fully exhausted. AMS expected her immediate return to work. Unfortunately, Scoggins failed to report to work for an additional 25 days." *Id.* Plaintiff contends that AMS never told Plaintiff that as of June 22, 2022, her FMLA leave time was exhausted. *Id.*

Furthermore, Plaintiff contends that around mid-July 2022, when Plaintiff asked Ms. Peacher to send FMLA documentation to Dr. Fredericks to complete for recertification, Plaintiff asked about her FMLA leave (i.e., how many hours she had remaining), Ms. Peacher told Plaintiff, "You are fine". *Id.* at p. 4. Moreover, Plaintiff was never provided written notice of the specific expiration date of her FMLA leave, in violation of 29 C.F.R. § 825.300(d)(1), which requires employers to provide a written notice when the employee's leave is expected to end. *Id.* This lack of written communication contributed to Plaintiff's misunderstanding of her FMLA entitlement. *Id.* Nonetheless, Plaintiff maintains that she worked and used FMLA leave intermittently throughout June, July, and into early August 2022. *Id.* However, August 4, 2022, was Plaintiff's last day at work. *Id.*

After that, on August 7, 2022, Plaintiff informed Ms. Morgan that she (Plaintiff) needed to take three or more weeks of FMLA leave to undergo procedures and get treatment for her worsening migraines. *Id.* AMS's Position Statement alleges that "No action was taken until it became apparent that Scoggins continued absences were for an

indefinite period…" *Id.* Yet, as noted above, on August 7, 2023, Plaintiff informed Ms. Morgan of the reason and the amount of time she needed to be off work.  *Id.* In fact, Plaintiff contends that the absences were requested with the assumption that she had FMLA leave to use.  *Id.*

Moreover, the time requested was not "indefinite"; it was for a specific period, i.e., initially she stated three or more weeks, and then it was specified as August 5, 2022 through September 9, 2022, according to documentation sent from Dr. Fredericks to AMS. *Id.*

Ultimately, Plaintiff categorically denies the allegations of performance deficiencies raised by Defendant, stating that she performed her duties diligently and in accordance with Company expectations. *See Exhibit "A,"* at ¶¶ 2-3. During her employment, Plaintiff received positive feedback from her supervisors and never faced formal written warnings or disciplinary actions *Id. at* ¶ 4-5. Plaintiff utilized FMLA leave as necessary to address her chronic migraines, with all absences approved and covered under Company policy *Id.* at ¶ 7. At no point did Defendant notify Plaintiff that her absences were causing significant disruptions to operations. *Id.* at ¶ 8.

### III.    LEGAL STANDARD

District courts may properly grant summary judgment only if, viewing the facts in the light most favorable to the non-movant, the movant shows that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

Summary judgment shall only be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show

that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett.*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of identifying the basis for its belief that there is an absence of a genuine issue for trial and pointing out those portions of the record that demonstrate such an absence. *Id.*

Once the movant has made this initial showing, the nonmoving party must present competent summary judgment evidence to show a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Such evidence consists of specific facts that show a genuine fact issue, such that a reasonable jury might return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L.Ed.2d 176 (1962).

When reviewing all of the evidence in the record, however, the Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-555, 110 S.Ct. 1331 (1990); *Liberty Lobby*, 477 U.S. at 254. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Liberty Lobby,* 477 U.S. at 255. Although the Court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. *See* 9A C. Wright & A. Miller, Federal Practice and Procedure §2529, pp. 299. That is, the Court should give credence to the

evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Id.,* at 300; *Reeves v. Sanderson Plumbing Prod., Inc*., 530 U.S. 133, 151, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000). In essence, though, the inquiry under summary judgment is the same as a judgment as a matter of law: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Liberty Lobby,* 477 U.S. at 251-52.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. *Hampton v. Gannett Co.*, Inc., 296 F.Supp.2d 716, 719 (S.D. Miss., 2003). It is improper for the district court to "resolve factual disputes by weighing conflicting evidence,… since it is the province of the jury to assess the probative value of the evidence." *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the Court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc*., 305 F.2d 647, 651 (5th Cir. 1962).  Defendant fails to meet this burden.

### IV.    ARGUMENT

Defendant's Motion rests on conclusory assertions and mischaracterizations of the record. Defendant claims Plaintiff's termination was warranted due to excessive absenteeism and operational strain, but this explanation is belied by inconsistencies in Defendant's justifications and its failure to comply with statutory requirements under the FMLA and ADEA. Ultimately, Defendant's Motion for Summary Judgment ignores both

undisputed and genuine issues of material fact. Genuine issues of material fact preclude Defendant's Motion for Summary Judgment, as detailed below:

### A. Plaintiff's Age Discrimination Claim Survives Summary Judgment

The Age Discrimination of Employment Act ("ADEA") is a federal law that makes it unlawful for an employer to "discriminate against any individual with respect to [their] compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. §623 (a)(1). In simple terms, the statute prohibits employment discrimination against individuals who are 40 years of age or older. *See generally* 29 U.S.C. §621 - §634.

To establish a claim under the ADEA, a plaintiff may use either direct or circumstantial evidence to prove intentional discrimination. *See Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994). Absent direct evidence, a plaintiff will typically follow the burden-shifting framework set forth in *McDonnell Douglas Corp v. Green* 411 U.S. 792, 93 S.Ct. 1817 (1973). Although *McDonnell Douglas* is a Title VII case, Courts have previously held that its framework is applicable to ADEA cases. *See Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 n. 4 (5th Cir.1993). The framework involves a burden-shifting analysis: (1) the plaintiff must demonstrate a *prima facie* case of discrimination; (2) the burden of production shifts to the employer to establish a legitimate and nondiscriminatory basis for the adverse employment decision; and (3) the plaintiff must then prove by a preponderance of the evidence that the employer's proffered reason is pretext. *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. at 1824–25; *Portis,* 34 F.3d at 328 n. 7.

### 1. Plaintiff is able to show that she has satisfied *prima facie* claim for age discrimination under the ADEA.

"A plaintiff seeking to establish a *prima facie* case of discrimination in violation of the ADEA must introduce evidence that (1) she is a member of the protected class, that is, over the age of forty; (2) that she is qualified for the position; (3) that she has been the subject of an adverse employment decision; and (4) that she was either replaced by someone outside the protected class, replaced by some one younger, or otherwise discharged because of her age." *Inmon v. Mueller Copper Tube Co., Inc.*, No.1:16CV209-NBB-DAS, 2018 WL 934823 (N.D. Miss. Feb. 16, 2018), aff'd, 757 F.App'x 376 (5th Cir. 2019). Moreover, "[t]o establish a *prima facie* case, a plaintiff need only make a very minimal showing." *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).

Plaintiff has met all four prongs of her *prima facie* case. First, is undisputed that Plaintiff was over the age of forty (40) at the time she was discharged. [Doc. 32 at p. 12]. Second, it is clear that Plaintiff was qualified for her position, as evidenced by sixteen (16) years of positive performance reviews and her ability to perform essential job duties prior to her termination.  Third, Plaintiff suffered an adverse employment action when Defendant terminated her on August 22, 2022 while Plaintiff was on intermittent FMLA leave. Shortly thereafter, Defendant then hired a significantly younger, less experienced individual, Tayler Jenkins, to replace Plaintiff.  These facts satisfy the *prima facie* burden under the ADEA.

### a.  Plaintiff's Qualification for her Position

Defendant's contention that Plaintiff was unqualified because her medical condition rendered her "unfit for the position" fails both factually and legally. [Doc. 32 at p. 12]. Plaintiff's affidavit attests to her longstanding history of strong performance, as

9

evidenced by 16 years of positive feedback and her ability to perform essential job duties prior to her termination. *See Exhibit "A"* at ¶¶ 3-5.  Plaintiff further asserts that her intermittent absences were covered under approved FMLA leave, with no prior indications from Defendant that her use of leave was disruptive to business operations. *Id.* at ¶¶ 7-8.The Fifth Circuit has repeatedly held that regular and consistent attendance, while an important function, does not automatically disqualify an employee who is entitled to reasonable accommodations under the FMLA. In *Moss v. Harris Cty. Constable Precinct One*, the court emphasized that intermittent absences for medical reasons do not automatically disqualify an employee from performing the essential functions of her job, especially when the employer has a history of accommodating such absences. *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 419 (5th Cir. 2017).

Plaintiff's chronic migraines, a recognized serious health condition under the FMLA, did not impair her ability to perform her role when she was present. Defendant's consistent approval of Plaintiff's intermittent FMLA leave from as early as 2010, but notably from 2016 through 2022 affirms that Plaintiff was capable of performing her job duties. [Doc. 29-2; Doc. 29-3]. Defendant's own acknowledgment of Plaintiff's strong performance, as evidenced by her long tenure and lack of prior disciplinary actions related to job performance, further undermines its argument. [Doc. 29-1 at p. 1-2; Doc. 29-2; Doc. 29-3; Doc. 29-4; Doc. 33] (documenting Plaintiff's consistent employment and absence of employment issues).  Most importantly, the Fifth Circuit has held that temporary absences under approved FMLA leave do not negate an employee's

qualifications; rather, they reflect an employee exercising federally protected rights. *See Carmona v. Southwest Airlines Co.*, 604 F.3d 848, 861 (5th Cir. 2010).

Moreover, Plaintiff's request for leave in July 2022 was accompanied by proper medical documentation, and she proactively communicated her expected return to work. [Doc. 29-2; Doc. 29-1]. Defendant's assertion that Plaintiff's medical condition rendered her unfit lacks credibility given its prior accommodations and its failure to engage in an interactive process to explore further accommodations. [Doc. 32 at p. 12; Doc. 29-2]. Under the Americans with Disabilities Act (ADA), employers are required to engage in an interactive process to determine reasonable accommodations for employees with disabilities. This duty is explicitly outlined in 29 C.F.R. § 1630.2(o)(3) and has been recognized in the Fifth Circuit. *See Feist v. Louisiana, Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450 (5th Cir. 2013); *Cutrera v. Bd. of Supervisors of Louisiana State Univ.*, 429 F.3d 108 (5th Cir. 2005). While the Family and Medical Leave Act (FMLA) does not require such a process, its provisions often intersect with the ADA when an employee's medical condition qualifies as a disability. Failing to explore accommodations, especially following the exhaustion of FMLA leave, may constitute a violation of federal law. In *Amedee v. Shell Chem., L.P.*, the court held that firing an employee without exploring reasonable accommodations or considering the temporary nature of absences violates federal law. *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 838 (5th Cir. 2020).

Furthermore, Defendant's decision to terminate Plaintiff during her approved FMLA leave further supports her claim of age discrimination. The Fifth Circuit has consistently held that terminations closely tied to FMLA leave requests or usage can

reflect unlawful motives. *See Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013). Plaintiff's termination on August 22, 2022, occurred mere weeks after she requested additional FMLA leave in July 2022. Defendant's reliance on FMLA-protected absences as a justification for termination directly contravenes the statute's protections. *See* 29 U.S.C. § 2615(a)(1).

Additionally, Plaintiff's termination letter references her absences, including FMLA-protected leave, as a basis for the adverse action. [Doc. 31-8]. Courts have held that using FMLA leave as a negative factor in employment decisions constitutes both FMLA interference and retaliation. *See Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 350 (5th Cir. 2013). Defendant's failure to provide written notice of leave exhaustion under 29 C.F.R. § 825.300(d) further underscores its procedural violations and discriminatory intent. According to 29 C.F.R. § 825.300(d)(1), an employer is required to provide written notice to an employee of the amount of FMLA leave the employee is entitled to and when the employee's FMLA leave is expected to end. In this case, Defendant failed to provide Plaintiff with a written notification of the specific end date of her FMLA leave. [Doc. 29 at p. 3-4].

Defendant's failure to comply with its notice obligations directly interfered with Plaintiff's ability to understand her rights and obligations under the FMLA. Without proper notice, Plaintiff reasonably relied on repeated assurances from AMS Benefits Coordinator Jill Peacher that her FMLA leave remained intact. See Scoggins Deposition, [Doc. 31-11 at pp. 25–27]. Courts have consistently held that such procedural failures constitute interference under the FMLA because they deprive employees of critical information needed to exercise their rights. See *Hester v. Bell-*

*Textron, Inc.*, 11 F.4th 301, 306 (5th Cir. 2021). Defendant's failure to provide written notice under 29 C.F.R. § 825.300(d) not only invalidates its reliance on absenteeism as a legitimate basis for termination but also serves as evidence of interference and retaliation.

Based on the evidence, Plaintiff was clearly qualified for her position, and Defendant's assertion that she failed to establish a prima facie case of age discrimination is without merit. Defendant's reliance on FMLA-protected leave as evidence of unfitness is both legally and factually incorrect.

## 2. Defendant's Justifications are Pretextual

Defendant's proffered justifications for Plaintiff's termination—excessive absenteeism and operational strain—are pretextual. Pretext may be demonstrated by showing that the employer's explanation is false or unworthy of credence, or that age was the real reason for the adverse action. See *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). Here, Defendant's reliance on FMLA-protected absences contradicts the protections afforded by the ADEA and FMLA.

First, Defendant's inconsistent explanations undermine its credibility. Initially, Defendant justified Plaintiff's termination based on operational strain caused by her absences, but later shifted to arguing Plaintiff was unqualified due to her medical condition. [Doc. 29-3; Doc. 32 at p. 12]. However, Defendant accommodated Plaintiff's intermittent FMLA leave from 2016 to 2022 without issue, demonstrating that her absences were not unmanageable or disruptive. [Doc. 29-2]. Defendant's claim of operational strain is contradicted by its consistent accommodation of Plaintiff's intermittent FMLA leave for six years without documented disruptions, demonstrating

that they were not unmanageable as claimed. This long-standing pattern of accommodation demonstrates that Plaintiff's absences were not unmanageable or burdensome. The sudden invocation of operational strain after Plaintiff's FMLA leave request strongly suggests pretext. This abrupt shift in justification following Plaintiff's FMLA leave request suggests a pretextual motive. Courts have held that shifting reasons for termination create a genuine issue of material fact as to pretext. *See Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007). As the court in *Burrell* noted, "When an employer offers inconsistent explanations for its employment decision at different times, the contradictions can serve as evidence of pretext." *Id.*

Second, temporal proximity between Plaintiff's FMLA leave request in July 2022 and her termination on August 22, 2022, supports an inference of discriminatory intent. The timing of Plaintiff's termination—mere weeks after her FMLA leave request— coincides with Defendant's shifting explanations for her discharge and suggests a retaliatory or discriminatory motive. This proximity, coupled with Defendant's inconsistent justifications, strongly supports the inference that Plaintiff's age and use of protected leave were motivating factors in her termination. Furthermore, When combined with Defendant's shifting explanations and procedural violations, this timing creates a compelling inference of pretext under Fifth Circuit law. Temporal proximity alone can establish a presumption of retaliation or discrimination under Fifth Circuit precedent, particularly when accompanied by other evidence of pretext. See *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992). The mere weeks between Plaintiff's protected activity and her termination raise a presumption of retaliatory or discriminatory

intent under Fifth Circuit law. *See Mauder v. Metro. Transit Auth. of Harris Cty.*, 446 F.3d 574, 583 (5th Cir. 2006); *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992). The Fifth Circuit has consistently held that "close timing between an employee's protected activity and an adverse employment action can be a significant factor in determining whether retaliation or discrimination occurred." *See Shirley*, 970 F.2d at 42.

Third, Defendant's decision to replace Plaintiff, a 66-year-old employee with 16 years of experience, with Tayler Jenkins, a 24-year-old with significantly less experience, further underscores Defendant's pretextual justifications. As the Supreme Court recognized in *O'Connor*, replacement by a substantially younger employee, particularly one lacking comparable qualifications, is strong evidence of discriminatory intent. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). As the Supreme Court stated in *O'Connor*, the fact that one person in the protected class has lost out to another person in the protected class is…irrelevant, so long as he lost out because of his age. *Id.* Here, the stark age difference and lack of comparable qualifications strongly suggest that age was a motivating factor in Plaintiff's termination, and a reasonable jury could conclude the same.

Fourth, Defendant's failure to provide written notice of FMLA leave exhaustion under 29 C.F.R. § 825.300(d)(4)-(6) further demonstrates pretext.[1] Defendant's failure to provide written notice under 29 C.F.R. § 825.300(d)(4)-(6) deprived Plaintiff of essential information regarding her leave status and obligations. This procedural

---

[1] Failure to follow the notice requirements set forth in 29 C.F.R. §825.300 denotes that an employer may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered. *See* §825.300(e) (referencing § 825.400(c)).

violation created unnecessary confusion about her FMLA entitlement, which Defendant later weaponized to justify her termination. This procedural failure deprived Plaintiff of critical information and facilitated the circumstances of her termination. Such conduct demonstrates a disregard for statutory protections and serves as additional evidence of pretext. This procedural violation left Plaintiff unaware of her FMLA status and contributed to the circumstances of her termination. Such conduct reflects a broader disregard for Plaintiff's statutory rights and reinforces the inference of discriminatory intent. Courts have emphasized that procedural failures can serve as evidence of pretext, particularly when they leave an employee unaware of their rights and obligations. See *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 306 (5th Cir. 2021).

Lastly, Plaintiff categorically denies any performance deficiencies and asserts that her absences were approved under FMLA leave policies. *See Exhibit "A"* at ¶¶ 3, 7-8. Moreover, Plaintiff attests that Defendant failed to provide notice of leave exhaustion as required under 29 C.F.R. § 825.300(d), further contributing to her termination while on protected leave *Id.* at ¶¶ 7-8. Plaintiff also states that these allegations are retaliatory and pretextual, citing discriminatory motives tied to her age and use of protected leave *Id.* at ¶¶ 9-10.

Taken together, Defendant's inconsistent justifications, procedural violations, temporal proximity, and replacement of Plaintiff with a significantly younger employee establish a pattern of behavior indicative of pretext. This cumulative evidence supports the conclusion that Plaintiff's age was the determinative factor in Defendant's decision, meeting the *but-for* causation standard under the ADEA. Ultimately, because a

reasonable jury could conclude that Defendant's reasons are pretextual, Defendant's Motion for Summary Judgment should be denied.

### B. Plaintiff's FMLA Claims Survive Summary Judgment

Plaintiff's FMLA interference and retaliation claims withstand summary judgment because Defendant Account Management Services, Inc. (AMS) repeatedly treated Plaintiff as eligible for FMLA leave, induced her reliance on this representation, and subsequently terminated her employment in retaliation for exercising her rights under the Act. Plaintiff attests that she complied with all FMLA requirements and that her absences were approved under Company policy. Exhibit "A" at ¶ 7. Moreover, Plaintiff has presented substantial evidence that Defendant's stated reason for her termination—excessive absences—is pretextual. Courts in the Fifth Circuit have held that adverse actions closely tied to an employee's FMLA-protected activity, combined with evidence of pretext, can support an inference of retaliatory intent. *See Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013) (finding that inconsistencies in the employer's justification and the failure to investigate could raise a fact issue as to retaliatory motive). Plaintiff's evidence of temporal proximity, Defendant's shifting explanations, and the replacement of Plaintiff with a non-FMLA-protected employee further demonstrate that the stated reason is pretextual, warranting denial of summary judgment.

### 1. Plaintiff's FMLA interference Claim

To state a *prima facie* FMLA interference claim, a plaintiff must allege that (1) she was an eligible employee; (2) her employer was subject to FMLA requirements; (3) she was entitled to leave; (4) she gave proper notice of his intention to take FMLA

leave; and (5) her employer denied him the benefits to which he was entitled under the FMLA." *Hester v. Bell-Textron, Inc*., 11 F.4th 301, 306 (5th Cir. 2021). Once the plaintiff states a *prima facie* claim, it is the employer's burden on summary judgment to articulate "a legitimate non-discriminatory reason for the employment action at issue," which then may be rebutted if "the plaintiff raise[s] an issue of material fact that the employer's proffered reason was pretextual." *Id.*

### i. Plaintiff's *prima facie* claim

Here, Plaintiff has met all five elements of her prima facie claim. First, she was repeatedly treated as eligible for FMLA leave from 2016 through 2022. [Doc. 29-1 at p. 1-2]. Defendant consistently approved her intermittent leave requests for chronic migraines, processing annual certifications without objection. [Doc. 29-2 at p. 2, 12]. In July 2022, Defendant's Benefits Coordinator explicitly assured Plaintiff that her FMLA eligibility remained intact through September 2022, further reinforcing Plaintiff's reasonable reliance on Defendant's representations. [Doc. 29-1 at p. 2]. Despite this assurance, Plaintiff proactively updated her FMLA certification, which Defendant approved on July 20, 2022, just weeks before her termination. These facts confirm Plaintiff's reasonable reliance on Defendant's representations and approvals.

Additionally, the FMLA requires that employers provide clear written notice to employees about the exhaustion of their FMLA leave, including a definitive end date for the leave. According to 29 C.F.R. § 825.300(d)(1), an employer is required to provide written notice to an employee of the amount of FMLA leave the employee is entitled to and when the employee's FMLA leave is expected to end. In this case, Defendant failed to provide Plaintiff with a written notification of the specific end date of her FMLA leave.

18

[Doc. 29 at p. 3-4]. This lack of notice created unnecessary confusion and contributed directly to the circumstances of her termination, further demonstrating Defendant's disregard for statutory protections and evidencing interference. *Id.*

Defendant's assertion that Plaintiff was ineligible for FMLA protection due to insufficient hours worked is misleading and fails to consider the hours worked and additional time attributable to protected intermittent leave. [Doc. 32 at p. 16]. Courts have consistently held that disputes over hours worked can present genuine issues of material fact precluding summary judgment. See *Lubke v. City of Arlington*, 455 F.3d 489, 497–98 (5th Cir. 2006). Furthermore, Defendant's own failure to provide proper written notice of FMLA leave exhaustion under 29 C.F.R. § 825.300(d) further undermines its position.

Equitable estoppel bars Defendant from now denying eligibility after fostering this reliance. In *Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 358 (5th Cir. 2006), the Fifth Circuit recognized that equitable estoppel applies where an employer's representations induce reasonable reliance to the employee's detriment. Similarly, in *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 726 (2nd Cir. 2001), the Second Circuit held that equitable estoppel applies when an employer misleads an employee about FMLA rights, resulting in detrimental reliance. The Sixth Circuit has also embraced this principle, as seen in *Dobrowski v. Jay Dee Contractors*, Inc., 571 F.3d 552, 554-55 (6th Cir. 2009), where the court barred an employer from denying FMLA protections after misrepresenting an employee's eligibility.

Although the Eleventh Circuit in *Dawkins v. Fulton County Government*, 733 F.3d 1084, 1089 (11th Cir. 2013) assumed, without deciding, that equitable estoppel could

apply in FMLA cases, the court ultimately found that the plaintiff failed to establish that they reasonably relied on the employer's representations. In that case, the plaintiff could not demonstrate that the employer's actions or assurances caused them to change their position to their detriment, a necessary element of equitable estoppel. *Id.* Nonetheless, the court acknowledged that an employer's conduct, such as approving FMLA leave despite eligibility concerns, could give rise to factual disputes about eligibility and reliance, leaving the door open for the application of equitable estoppel in future FMLA cases under different circumstances. Moreover, in *Woodford v. Community Action of Greene County, Inc.*, 268 F.3d 51, 57 (2nd Cir. 2001), the Second Circuit held that employers who initially approve FMLA leave may be estopped from later asserting ineligibility, particularly when the employee reasonably relies on the employer's conduct.

The Fifth Circuit's articulation of equitable estoppel includes three elements: (1) a representation by conduct or word; (2) justifiable reliance thereon; and (3) a change in position to one's detriment due to that reliance. *See Johnson v. Seacor Marine Corp.*, 404 F.3d 871, 878 (5th Cir. 2005). Plaintiff's case satisfies all three elements. AMS represented Plaintiff's FMLA eligibility through its consistent approval of her leave over six years and its Benefits Coordinator's explicit assurance in July 2022 that recertification was unnecessary until September. Plaintiff reasonably relied on these representations by continuing to take FMLA leave and requesting additional leave in August 2022 to undergo medical procedures. [Doc. 29-1 at p. 3-4; Doc. 29-2 at p. 1-11]. Defendant terminated Plaintiff during her approved leave period, causing financial and emotional harm. [Doc. 29-1 at p. 4-5]. Defendant's conduct, coupled with its history of

approving certifications, distinguishes this case from *Dawkins* and aligns with *Minard*, *Kosakow*, and *Dobrowski*.

Ultimately, AMS's repeated approval of Plaintiff's FMLA leave and its representations, including the July 2022 assurance that recertification was unnecessary until September, preclude Defendant from now denying eligibility. [Doc. 29-1 at p. 2-4; Doc. 29-2 at p. 2, 12]. Defendant's attempt to disclaim its obligations is undermined by its own actions, which consistently treated Plaintiff as eligible for FMLA leave for six years. [Doc. 7 at p. 2; Doc. 29-2 at p. 1-14]. The misrepresentation and Plaintiff's detrimental reliance satisfy the eligibility prong of her FMLA interference claim and preclude Defendant from now contesting eligibility. As such, Plaintiff has satisfied the first element of her *prima facie* claim for FMLA interference.

Second, Defendant is subject to FMLA requirements because it voluntarily provided FMLA leave to Plaintiff from 2016 through 2022. *See generally* [Doc. 29-2]. By approving Plaintiff's intermittent leave requests and processing her certifications, Defendant operationally acknowledged its obligations under the Act. *Id*. Courts in multiple circuits have consistently held that when an employer grants FMLA leave, it is estopped from later disclaiming its obligations. *See Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 358 (5th Cir. 2006) (applying equitable estoppel to bar an employer from denying FMLA protections after inducing reliance through a written assurance of eligibility); *Woodford v. Community Action of Greene County, Inc.*, 268 F.3d 51, 57 (2nd Cir. 2001) (holding that employers who approve FMLA leave may be estopped from later asserting ineligibility when the employee reasonably relies on the employer's conduct); *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554-55 (6th Cir. 2009)

(employer who granted leave consistent with FMLA obligations estopped from later claiming ineligibility); and *Dawkins v. Fulton County Government*, 733 F.3d 1084, 1089 (11th Cir. 2013) (acknowledging that equitable estoppel may apply in FMLA cases but finding it inapplicable where the plaintiff failed to show reasonable and detrimental reliance on the employer's representations).

Ultimately, Defendant's actions in approving leave reflect their recognition of these responsibilities pursuant to the FMLA. Moreover, the consistent assurances provided to Plaintiff in this case distinguish it from cases like *Dawkins*, while aligning it closely with the reasoning in *Minard* and *Dobrowski*, where the doctrine of equitable estoppel was successfully applied to bar employers from disclaiming their obligations under the Act. As such, Plaintiff is able to meet the second element of her *prima facie* claim for FMLA interference.

Third, Plaintiff is entitled to leave for her chronic migraines, which qualify as a "serious health condition" under the FMLA because they involve continuing treatment by a healthcare provider. The Fifth Circuit in *Cuellar v. Keppel Amfels, LLC* affirmed that chronic conditions requiring ongoing medical treatment meet the FMLA's definition of a serious health condition. 731 F.3d 342, 346 (5th Cir. 2013). Here, it is undisputed that Plaintiff submitted annual medical certifications from 2016 through 2022, including an updated certification in July 2022, all of which documented her ongoing need for treatment and were approved by Defendant without objection. [Doc. 29-2 at p. 2, 12].

Furthermore, Defendant's longstanding practice of approving Plaintiff's leave requests demonstrates its acknowledgment of her entitlement under the FMLA. By approving these certifications and accommodating Plaintiff's leave requests over a six-

year period, Defendant implicitly recognized her entitlement to leave. This pattern of conduct aligns with the FMLA's protections for employees facing chronic health issues requiring periodic treatment. *See Cuellar v. Keppel Amfels*, LLC, 731 F.3d 342, 346 (5th Cir. 2013) (holding that chronic health conditions requiring ongoing treatment qualify as a "serious health condition" under the FMLA). Consistent approval of FMLA leave, as seen here, supports an employee's reasonable reliance on their entitlement, thereby solidifying their rights under the statute. *See Minard v. ITC Deltacom Commc'ns, Inc*., 447 F.3d 352, 358 (5th Cir. 2006) (holding that an employer's conduct in granting FMLA leave can estop it from later denying eligibility); *Johnson v. Seacor Marine Corp*., 404 F.3d 871, 878 (5th Cir. 2005) (establishing that conduct leading to reasonable reliance can preclude a party from denying its prior representations). This history not only demonstrates compliance with the Family Medical Leave Act but also solidifies Plaintiff's entitlement to leave under the FMLA, as Defendant's actions repeatedly affirmed her rights and obligations under the statute. As such, Plaintiff has met the third element of her prima facie claim for FMLA interference.

Fourth, Plaintiff provided proper notice of her need for leave on August 7, 2022, when she informed her supervisor, Michelle Morgan, that she needed time off for diagnostic procedures and treatment of worsening migraines. [Doc. 29-1 at p. 2]. Moreover, Defendant received her neurologist's certification confirming her need for leave from August 5 through September 9, 2022 and later approved such leave. [Doc. 29-2 pgs. 1-11]. This timely notice satisfies FMLA requirements. *See Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (finding proper

notice sufficient when paired with medical certification). As such, Plaintiff has met the fourth element of her *prima facie* claim for FMLA interference.

Lastly, Defendant denied Plaintiff the benefits to which she was entitled under the FMLA, satisfying the fifth and final element of her *prima facie* claim for FMLA interference. Defendant terminated Plaintiff during her approved FMLA leave period on August 23, 2022, which interfered with her right to take FMLA-protected leave. [Doc. 29-2 at p. 1-11; 29-3 at p. 2].  Termination during FMLA leave may constitute interference under the Act if the employer cannot demonstrate a legitimate, non-discriminatory reason for the termination. See C*uellar v. Keppel Amfels, LLC*, 731 F.3d 342, 346 (5th Cir. 2013) (addressing interference claims involving termination related to FMLA leave); *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (hindering an employee's ability to take protected leave violates the FMLA if notice and certification requirements are met).

Additionally, other courts have similarly held that terminating an employee during FMLA leave can constitute interference when the leave is a factor in the decision. *See Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001) (holding that using FMLA leave as a negative factor in employment decisions constitutes interference); *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002) (finding that terminating an employee to prevent them from exercising their right to return to work after FMLA leave constitutes interference); *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004) (holding that terminating an employee during their FMLA leave can constitute interference with FMLA rights). Defendant's actions, as in these aforementioned cases, interfered with Plaintiff's ability to exercise her rights

under the FMLA, and no legitimate justification unrelated to her leave has been demonstrated by Defendant.

Ultimately, Defendant has failed to provide any legitimate justification unrelated to Plaintiff's FMLA leave for its actions. Plaintiff has established all elements of a *prima facie* case of FMLA interference. From 2016 to 2022, Defendant treated Plaintiff as eligible for FMLA leave, consistently approving her leave requests and medical certifications for chronic migraines. Defendant's Benefits Coordinator explicitly assured Plaintiff of her eligibility, creating reliance. The doctrine of equitable estoppel bars Defendant from now denying eligibility after years of representations and approvals. Plaintiff's chronic migraines qualify as a serious health condition under the FMLA, as supported by ongoing medical certifications consistently approved by Defendant. Plaintiff also provided proper and timely notice of her need for leave in August 2022, yet Defendant terminated her during the approved leave period, directly interfering with her FMLA rights and violating the Act. These facts demonstrate that Plaintiff has satisfied the requirements for a *prima facie* claim of FMLA interference.

## ii.  Defendant's proffered reason is pretextual

Defendant's assertion that Plaintiff was terminated due to excessive absences is pretextual and lacks merit. Plaintiff's absences during the relevant period were protected under the FMLA, as they were fully documented by her medical certifications and approved by Defendant. [Doc. 29-2]. Courts have consistently held that absences protected under the FMLA cannot serve as a legitimate basis for termination unless the employer can demonstrate a non-discriminatory reason unrelated to FMLA absences. *See Cuellar v. Keppel Amfels, LLC*, 731 F.3d 342, 347 (5th Cir. 2013) (finding that an

employer interferes with FMLA rights if it uses FMLA-protected leave as a negative factor in employment decisions). Likewise, Courts in the Fifth Circuit have consistently held that relying on FMLA-protected absences to justify termination constitutes interference or retaliation. *See Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013) (holding that an employer's reliance on FMLA-protected absences as a justification for termination can support an inference of retaliatory intent); *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998) (recognizing that reliance on FMLA leave as a negative factor violates the Act and constitutes interference).

Additionally, the close temporal proximity between Plaintiff's approved leave in early August 2022 and her termination on August 23, 2022, strongly supports an inference of retaliatory motive. [Doc. 29-1 at p. 2]. The Fifth Circuit has recognized that temporal proximity, when combined with other evidence, can establish pretext at the summary judgment stage. *See Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) (noting that temporal proximity between FMLA leave and termination can support an inference of causation); *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992) (holding that close timing between a protected activity and adverse action supports an inference of pretext).

Furthermore, Defendant has not provided evidence of any non-FMLA-protected absences or performance issues that would justify its decision to terminate Plaintiff. Reliance on FMLA-protected absences as grounds for termination is both unlawful and indicative of pretext. *See Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998) (stating that an employer's reliance on FMLA-protected leave as a negative factor constitutes interference with FMLA rights).

Finally, Plaintiff's replacement by an employee with no documented need for FMLA leave raises concerns about retaliatory motives. Replacing an employee who required FMLA-protected leave with someone less likely to need such accommodations suggests an effort to avoid future obligations, further supporting an inference of pretext. Although *Richardson v. Monitronics Int'l,* Inc., 434 F.3d 327, 336 (5th Cir. 2005) involved a claim under the Age Discrimination in Employment Act (ADEA), the Fifth Circuit held that evidence of replacement by someone outside the protected class can support an inference of discrimination. While the case is not directly about the FMLA, its reasoning applies by analogy: replacing an employee who exercised their FMLA rights with someone less likely to require leave could similarly suggest retaliatory or discriminatory motives, particularly when viewed in conjunction with other evidence of pretext.

Ultimately, Defendant's reliance on Plaintiff's FMLA-protected absences, combined with the close timing of her termination and the absence of legitimate justification, demonstrates that its stated reason is a pretext to mask interference with her FMLA rights. Summary Judgment should therefore be denied.

### 2. Plaintiff's FMLA Retaliation Claim

In order for a Plaintiff to survive summary judgment for a FMLA retaliation claim, a plaintiff in the Fifth Circuit must demonstrate that (1) they are protected under the FMLA; (2) they suffered an adverse employment decision; and (3) the adverse employment decision was made because of the plaintiff's request for leave. *Hester*, 11 F.4th at 305 (quoting *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998)).  If the plaintiff makes a *prima facie* case, the employer must then "articulate a

legitimate, non-discriminatory reason for the adverse employment action." *McArdle v. Dell Prods., L.P.*, 293 F. App'x 331, 336 (5th Cir. 2008).  If the employer makes this showing, the plaintiff must then rebut the proffered reasons, showing that the employer's proffered reason is a pretext for retaliation.

### i. Plaintiff's *prima facie* claim for retaliation

Plaintiff satisfies the first element because she engaged in a protected activity under the FMLA by taking leave for her worsening migraines. [Doc. 29-1 at p. 3-4; Doc. 29-2 at p. 1-11]. The Fifth Circuit has consistently held that taking FMLA leave is a protected activity under the Act. *See Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 580 (5th Cir. 2006) (recognizing that taking FMLA leave is a protected right and that retaliation for exercising this right violates the FMLA). Plaintiff's certified leave for chronic migraines falls squarely within the scope of FMLA-protected activity, satisfying the first element of her *prima facie* claim for retaliation.

The second element is also met because Plaintiff suffered an adverse employment action when she was terminated on August 23, 2022, during her approved FMLA leave. [Doc. 29-1 at p. 3; Doc. 29-2 at p. 2; Doc. 29-3 at p. 2]. Termination is a quintessential adverse employment action for purposes of FMLA retaliation claims. *See Ion v. Chevron USA, Inc.*, 731 F.3d 379, 391 (5th Cir. 2013) (recognizing termination as an adverse action in FMLA retaliation claims); *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) (holding that termination satisfies the adverse action prong in FMLA retaliation cases). Moreover, the Fifth Circuit has consistently acknowledged that terminating an employee during FMLA leave can fulfill this prong of a retaliation claim. *See Cuellar*, 731 F.3d at 346 (termination during FMLA leave may

constitute interference and retaliation if causally connected to protected leave). Accordingly, Plaintiff's termination clearly satisfies the adverse employment action requirement for her retaliation claim.

Lastly, Plaintiff satisfies the third element by establishing a causal connection between her protected activity and her termination. The close temporal proximity between her request for leave and her termination strongly supports this connection. [Doc. 29-1 at p. 3-4; Doc. 29-2 at p. 11; Doc. 29-3 at p. 2]. Courts in the Fifth Circuit have repeatedly recognized that temporal proximity, when combined with other evidence, can establish causation at the summary judgment stage. *See Shirley*, 970 F.2d at 42 (holding that close timing between protected activity and an adverse action supports an inference of causation); *Hester*, 11 F.4th at 305 (noting that close temporal proximity can support causation in FMLA retaliation claims). The temporal proximity here, coupled with the lack of a legitimate non-retaliatory explanation, establishes the causal connection.

Accordingly, these material facts support Plaintiff's *prima facie* case of FMLA retaliation.

### ii. Pretext for Retaliation

Once Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to provide a legitimate, non-retaliatory reason for the termination. Defendant has asserted "excessive absences" as the justification for the adverse action. [Doc. 29-3 at p. 3]. However, Plaintiff presents evidence below demonstrating that this explanation is a pretext for retaliation.

First, Defendant's reliance on absences that were FMLA-protected undermines the credibility of its stated reason. The FMLA protects employees from adverse actions based

on approved leave. *See Ion*, 731 F.3d at 390 (holding that an employer's reliance on FMLA-protected leave as a justification for termination can support an inference of pretext). By including these protected absences in its justification, Defendant's reasoning is legally flawed and raises questions about its intent.

Second, Plaintiff's immediate replacement by a younger employee with no FMLA protections suggests retaliatory motives. [Doc. 29-1 at p. 3]. Courts have found that evidence of a replacement under circumstances that suggest a preference for younger or less protected individuals can undermine an employer's explanation. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (noting that evidence of discriminatory intent can discredit an employer's justification). In *Watkins v. Tregre*, the Fifth Circuit highlighted that terminating an employee during FMLA leave and replacing them with another individual, particularly one who does not require FMLA leave, can contribute to an inference of retaliatory intent, further supporting a finding of pretext. Defendant's claim of operational burden is inconsistent with its long-standing practice of accommodating Plaintiff's intermittent FMLA leave from 2016 to 2022 without disruption. The absence of documented complaints or performance issues during this period undermines Defendant's reliance on operational strain as a justification, suggesting it is a pretext for retaliation. Courts have held that such post hoc rationalizations can be evidence of pretext. See *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013).

Third, the temporal proximity between Plaintiff's FMLA leave and her termination further supports the finding of pretext. The Fifth Circuit has repeatedly recognized that close timing between a protected activity and an adverse action can be compelling evidence of retaliatory motive. *See Shirley*, 970 F.2d at 42. Plaintiff's termination occurred

while she was actively on FMLA leave, providing strong circumstantial evidence of retaliatory intent. The timing of Plaintiff's termination—just weeks after her July 2022 FMLA recertification and leave request—is highly probative of retaliatory motive. Temporal proximity alone can establish a presumption of retaliation or discrimination under Fifth Circuit precedent, particularly when accompanied by other evidence of pretext. See *Shirley*, 970 F.2d at 42.

Finally, Defendant's justification for Plaintiff's termination focuses on the operational burden caused by her absences, but this rationale is not separate from its argument about excessive absences. Rather, it is an elaboration of the consequences of those absences. [Doc. 29-4 at p. 8]. While Defendant contends that Plaintiff's ongoing and indefinite leave strained operations, the reliance on FMLA-protected absences as the foundation for this argument undermines its legitimacy. The operational burden is inseparable from the absences and thus remains tied to the protected activity. *See Ion*, 731 F.3d at 390.

Given the reliance on FMLA-protected absences, the timing of the termination, the replacement by a younger employee, and the interconnected nature of Defendant's stated reasons, a reasonable jury could find that Defendant's explanation is pretextual. Accordingly, Defendant's motion for summary judgment should be denied.

### C. Defendant's Admission to Violating the FMLA

Defendant's admissions and actions demonstrate clear violations of the Family and Medical Leave Act (FMLA). Defendant relied on Plaintiff's FMLA-protected absences as a basis for termination, thereby interfering with her statutory rights and retaliating against her for exercising those rights. [Doc. 29-3; Doc. 32 at p. 12]. These

violations are supported by testimony from Defendant's representatives, Plaintiff's affidavit, and the record as a whole.

### a. Reliance on FMLA-Protected Absences

Defendant's termination letter and EEOC Position Statement explicitly cite Plaintiff's absences as the justification for her termination. See [Doc. 31-8]; [Doc. 29-3]. Michelle Morgan, AMS's Billing Supervisor, acknowledged that Plaintiff's FMLA leave was consistently approved from 2016 to 2022 and that AMS accommodated her medical needs without issue. [Doc. 31-12 at ¶¶ 4–5]. However, Morgan admitted that Plaintiff exceeded her FMLA entitlement while continuing to take leave with AMS's awareness and no formal warnings. *Id*.

Despite this history of accommodation, Defendant abruptly terminated Plaintiff, citing these same FMLA-protected absences. The Fifth Circuit has consistently held that using FMLA-protected absences as a negative factor in employment decisions violates the FMLA. See *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir. 2013); *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998).

### b. Procedural Failures Under the FMLA

Defendant failed to provide Plaintiff with formal notice of leave exhaustion, as required by 29 C.F.R. § 825.300(d). Plaintiff testified that AMS Benefits Coordinator Jill Peacher repeatedly assured her that her FMLA leave was intact, creating reliance on these representations. See Scoggins Deposition, [Doc. 31-11 at pp. 25–27]. Without proper notice, Plaintiff was unaware of her leave exhaustion and unable to make informed decisions regarding her employment. Such procedural failures constitute interference under the FMLA. See *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 306 (5th Cir. 2021).

### c. Disparate Treatment and Retaliatory Motive

Defendant treated Plaintiff differently from similarly situated employees. Michelle Morgan admitted that AMS routinely granted other employees' leave requests under similar circumstances without taking adverse action. See [Doc. 31-12]. This disparate treatment, coupled with the timing of Plaintiff's termination—mere weeks after her FMLA recertification and leave request—supports an inference of retaliation. Courts in the Fifth Circuit have consistently recognized that close temporal proximity between protected activity and adverse action, combined with shifting justifications, establishes a compelling case of pretext. See *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992); *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013).

### V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion for Summary Judgment in its entirety. Genuine disputes of material fact exist regarding Defendant's justifications for Plaintiff's termination, including inconsistencies in its explanations, reliance on FMLA-protected absences, and procedural violations under 29 C.F.R. § 825.300(d). Plaintiff's affidavit further supports the existence of genuine disputes of material fact regarding Defendant's allegations of performance deficiencies, its handling of Plaintiff's FMLA leave, and its discriminatory and retaliatory motives. *See* Exhibit "A". Moreover, the close temporal proximity between Plaintiff's protected activity and her termination, combined with the replacement of Plaintiff with a significantly younger and less qualified individual, strongly supports an inference of pretext.

A reasonable jury could conclude that Defendant interfered with Plaintiff's FMLA rights, retaliated against her for exercising those rights, and unlawfully terminated her employment due to her age in violation of the ADEA. Defendant's actions demonstrate a disregard for Plaintiff's statutory protections under both the FMLA and the ADEA, and these genuine issues of material fact warrant the denial of summary judgment.

THIS the 13th day of January, 2025.

Respectfully submitted,

s/ Jane A. Watson
JANE A. WATSON (MB# 106877)
NICK NORRIS (MB# 101574)
LOUIS H. WATSON, JR. (MB# 9053)
Attorney for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
1501 Jackson Avenue W. STE 113 PMB 101
Oxford, MS 38655
(601) 968-0000
Fax: (601) 968-0010
jane@watsonnorris.com

## CERTIFICATE OF SERVICE

I, Jane A. Watson, attorney for Plaintiff, do hereby certify that I have this day served a true and correct copy of the above and foregoing pleading via ECF filing or by United States Mail with postage fully prepaid thereon to all counsel of record.

SO CERTIFIED, this the 13th day of January, 2025.

 s/ Jane A. Watson
JANE A. WATSON